IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MANSOUR BIN EL-AMIN, )
      Plaintiff, )
)
v. ) Case No. 3:12-cv-416
)
CORRECT CARE SOLUTIONS, *et al.*, ) Judge Sharp
)
      Defendants. )

**MEMORANDUM OPINION**

Before the court for an initial screening is plaintiff Mansour Bin El-Amin's *pro se* complaint under 42 U.S.C. § 1983 (ECF No. 1). 28 U.S.C. §§ 1915(e)(2), 1915A(a). The plaintiff seeks to bring claims against Correct Care Solutions, Doctor Stewart, and Nurse M. Stephens, in both their individual and official capacities. The plaintiff proceeds *in forma pauperis*.

**I.    ALLEGATIONS IN THE COMPLAINT**

The plaintiff alleges that he was subjected to "cruel and unusual punishment" when he was moved out of the general jail population at the defendants' directive and housed in the medical pod at the jail for more than a month. He claims that being moved to the medical pod was unnecessary, and that while there he was he was forced to sleep on a bunk the legs of which had been cut off, in a cell with a steel toilet and no mirror, and he was forced to eat his food in the cell with the toilet in it. The plaintiff also claims that while he was in the medical pod he found and smelled "things" in his food, and that he was "almost poisoned" twice by inmate workers trying to "do something" to his food. (ECF No. 1, at 5.) He wrote a grievance about this problem but claims it was "brushed off" simply because he was in the medical pod, as a result of which he was unable to eat.

The plaintiff also asserts that he has been denied appropriate medical treatment. Specifically, he asserts that an orthopedic in Clarksville told him he needed surgery on his elbow and gave him a shot in his elbow that helped relieve the pain, but that the medical staff at the jail has refused to send him for surgery and has not helped his problem at all. He complains that (1) Nurse Stephens will not let him obtain his medical records from the orthopedic without paying for them; (2) Dr. Stewart has been

prescribing him medication that upset his stomach and made him very sick; (3) Dr. Stewart keeps trying to prescribe him other medications but will not explain why; (4) Dr. Stewart gave him a shot in his elbow that caused extreme swelling and pain; (5) Dr. Stewart moved him into the medical pod in the first place to "cover up what he [did]"; and (6) Dr. Stewart and Nurse Stephens' decision to place him in the medical pod has caused "extreme mental duress." (ECF No. 1, at 5)

The plaintiff also states he now has a problem with his eyes. He complains that he was charged a co-pay and that he read an eye chart but that otherwise no one has treated his eye problem. He alleges that he has been told that he is scheduled to see an eye specialist in the "near future." (ECF No. 1, at 5.)

## II. STANDARD OF REVIEW

Under the Prison Litigation Reform Act ("PLRA"), this Court is required to conduct an initial screening of a prisoner's civil complaint if, as in this case, it is filed *in forma pauperis* or if it seeks redress from a governmental entity or official. 28 U.S.C. §§ 1915(e)(2), 1915A. After the initial screening, the Court must *sua sponte* dismiss the complaint or any portion thereof if it is determined to be frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief from a defendant immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing a *pro se* complaint under this standard, the Court must construe the pleading liberally, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## III. ANALYSIS AND DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the deprivation was caused by a person

acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Both parts of this two-part test must be satisfied to support a claim under § 1983. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. *Cruel and Unusual Punishment Claim*

The Eighth Amendment's prohibition against cruel and unusual punishments "proscribe[s] more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When the conditions of confinement compose the punishment at issue, the Eighth Amendment forbids deprivations or conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

An Eighth Amendment claim contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To satisfy the objective component the deprivation must be sufficiently grave. *Id.* The objective component requires the prisoner to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. This determination is made by reference to "contemporary standards of civilized decency that currently prevail in society." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). In a conditions-of-confinement case, the Eighth Amendment is concerned only with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Accordingly, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* To satisfy the subjective component, the officials must have acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297. The subjective component requires the prisoner to demonstrate that the prison officials acted wantonly, with deliberate indifference to the prisoner's serious needs. *Id.* Accordingly, to succeed on his Eighth Amendment claim, the plaintiff must establish both that the defendants denied him "a single, identifiable necessity of civilized human existence," and that they "acted with a sufficiently culpable state of mind." *Hadix*, 367 F.3d at 525.

The plaintiff here complains that he was housed in a medical pod for over a month, where he was required to sleep on a bunk on the floor, that his cell came equipped with a steel toilet but no mirror, and

he was forced to eat his food in the cell that had a toilet in it. The plaintiff also complains about the food he was given and claims that other inmates tried to "do something" to his food. In an inmate grievance form attached as an exhibit to the complaint, the plaintiff complained that he was afraid that the workers serving food had spit in his tray; he also complained that he had found hair in his food and that the food smelled like cleaning products. The plaintiff does not, however, allege that he became sick as a result of eating the food or as a result of having to eat in a room with a toilet in it. In addition, the bunk's placement on the floor and the absence of a mirror in the cell amount at most to minor inconveniences. The Court finds that the plaintiff has not alleged facts suggesting he was deprived of any "identifiable necessity of civilized human existence." *Id.* The deprivations alleged by the plaintiff are simply insufficiently serious to establish that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment.

### B. *Deliberate Indifference to Serious Medical Needs*

In order to state a claim under § 1983 based on the failure to provide medical care, a plaintiff must allege facts which, if true, suggest that the defendant was deliberately indifferent to the plaintiff's serious medical condition. When a prison official's inattention to a prisoner's serious medical need amounts to deliberate indifference, such indifference constitutes the "unnecessary and wanton infliction of pain" that is proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only [to] that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 20 (1992). A prison official cannot be found liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Thus, a prisoner's claim that he has received inadequate medical treatment does not always state a violation of the Eighth Amendment. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–06 (internal quotation marks omitted). In other words, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *See Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) ("Misdiagnoses, negligence, and malpractice are not, however, tantamount to deliberate indifference").

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

In the present case, the plaintiff alleges claims related to medical problems with his elbow and with his eyes. With respect to his elbow, the plaintiff alleges that he received an orthopedic consultation (though it is unclear when), and that he has received treatment for his elbow pain at the Montgomery County Jail—to some extent more treatment than the plaintiff desired, as he objected to being housed in the medical pod, and he asked the doctor to stop prescribing him medication. The plaintiff's allegations regarding his elbow pain might conceivably state a claim under state law for negligence, but they are not sufficient to state a claim under the Eighth Amendment for deliberate indifference.

With respect to the problem with his eyes, the plaintiff alleges, in full, as follows: "As of now I have a problem with my eyes[.] They charged me a co-pay. And [I] did see a eye chart[.] And again [no] one has saw me. Nurse M. Stephen say in the near future. And my eye hurt really bad." (ECF No. 1, at 6.) One of the Inmate Medical Grievance Forms attached as an exhibit to the complaint concerns the plaintiff's "eye problem." On this form, he states "[M]y eyes hurt me really bad to see. The question is do I still have my appointment set for the eye doctor. And is it soon it's been a month. I don't want to know

the date but about how much longer." (ECF No. 1, at 12.) Nurse Stephens responded "Near future." (*Id.*) In other words, the plaintiff's allegations indicate that the plaintiff obtained some treatment for his complaint of eye pain (he saw a medical practitioner, was required to read an eye chart, and was charged a co-pay for this visit), and now has an appointment scheduled with an eye specialist. In the free world, too, it sometimes takes a period of weeks or more to get an appointment with a specialist. The plaintiff has not alleged that his problem is so severe that he should have been taken to the emergency room, nor does he allege that the delay in seeing the specialist has resulted in the exacerbation of his problem. *Cf. Farmer*, 511 U.S. at 844–45 ("[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.") *Rodriguez v. Ames*, 224 F. Supp. 2d 555, 563 (W.D.N.Y. 2002) (finding that neither a one-week delay in scheduling an appointment to see a specialist nor a 15-day delay in sending an inmate to an emergency room for treatment of a broken hand constituted Eight Amendment deliberate indifference). The Court finds that these medical problem alleged is not sufficiently serious to state an Eighth Amendment claim, that is, the facts as alleged in the complaint are not "facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837. Nor do the allegations suggest that the defendants have been deliberately indifferent to the plaintiff's needs.

**IV.     CONCLUSION**

The plaintiff has failed to allege facts which, if proven true, would establish a violation of rights secured by the Eighth Amendment to the United States Constitution: He has not established that he has been subjected to cruel and unusual punishment, or that the defendants have been deliberately indifferent to a serious medical condition. Absent a violation of federal law, the plaintiff is unable to prove every element of a § 1983 cause of action. Consequently, he has failed to state a claim upon which relief can be granted, and the Court is obliged to dismiss this action *sua sponte*. 28 U.S.C. §§ 1915A(b), 1915(e)(2).

The Sixth Circuit has stated that the dismissal of a complaint under § 1915 or § 1915A "does not negate a prisoner's obligation to pay the filing fee . . . . [A] court's responsibility under the Prison Litigation Reform Act is first to examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our

mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order. *McGore*, 114 F.3d at 608.

Accordingly, an order will be entered dismissing the plaintiff's complaint and assessing the filing fee.

Kevin H. Sharp
United States District Judge